806 S.E.2d 777

**STATE of West Virginia, Respondent**

v.

**Orville M. HUTTON, Petitioner.**

No. 16-1069

Supreme Court of Appeals of West Virginia.

Submitted: October 18, 2017

Filed: November 1, 2017

Wiley W. Newbold, Morgantown, West Virginia, Attorney for Petitioner

Patrick Morrisey, Attorney General, Elbert Lin, Solicitor General, Thomas M. Johnson, Jr., Deputy Assistant Attorney General, Gilbert Dickey, Assistant Attorney General, Zachary Viglianco, Assistant Attorney General, Charleston, West Virginia, Attorneys for Respondent

1. The test is set out *infra* in the Discussion Section of this opinion.

2. The punishment for malicious assault under the statute in effect at the time of Mr. Hutton's indictment was not less than two nor more than ten years imprisonment. *See* W. Va. Code § 61-2-9(a) (2004) (Repl. Vol. 2010). *Accord* W. Va. Code § 61-2-9 (a) (2017) (Supp. 2017).

3. The punishment for each sexual assault count was not less than ten nor more than twenty-five years imprisonment. *See* W. Va. Code § 61-8B-4(b) (1991) (Repl. Vol. 2014).

4. Under a *Kennedy* plea, a defendant enters a guilty plea without admitting guilt. *See* Syl. pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43

Davis, Justice:

Petitioner, Orville M. Hutton ("Mr. Hutton"), appeals from an order of the Circuit Court of Harrison County that denied him relief in his petition for a writ of error coram nobis. In this appeal, Mr. Hutton contends that he satisfied the four-part test for coram nobis relief.[1] After carefully reviewing the briefs, the arguments of the parties, the legal authority cited, and the record presented for consideration, we reverse and remand for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 2010, a Harrison County grand jury indicted Mr. Hutton for malicious assault[2] and three counts of sexual assault in the second degree.[3] The victim of the crimes was Mr. Hutton's girlfriend, who also was the mother of their four-year-old son. In May of 2010, shortly after the indictment, Mr. Hutton entered a *Kennedy* plea of guilty to the felony crime of unlawful assault, in exchange for the charges set out in the indictment being dropped.[4] In July of 2010, Mr. Hutton was sentenced to a term of one to five years. At some point, Mr. Hutton was released on parole. However, his parole was revoked, and he was required to serve the full term of his sentence.

On May 15, 2013, a few days before Mr. Hutton was set to be released from prison, he was notified by the Department of Homeland Security that, as a result of his

(1987) ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."). *See also North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 168, 27 L.Ed.2d 162 (1970) ("In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.").

felony conviction, he would be held by the federal government under a detainer and processed for deportation to the place of his birth, Jamaica.[5] Upon being discharged from his State sentence, on May 25, 2013, Mr. Hutton was turned over to the federal government for deportation proceedings. During the pendency of the deportation proceedings, Mr. Hutton filed a petition for writ of error coram nobis with the circuit court. Mr. Hutton alleged in the petition that he received ineffective assistance of counsel because his trial counsel failed to inform him that his guilty plea to the felony crime of unlawful assault would result in his being deported from the United States. By order entered April 28, 2014, the circuit court denied relief to Mr. Hutton on the ground that the writ of error coram nobis was abolished in West Virginia. Mr. Hutton appealed that ruling. In the appeal to this Court, we reversed the circuit court's order and held in Syllabus point 3 of *State v. Hutton*, 235 W. Va. 724, 776 S.E.2d 621 (2015) ("Hutton I"), that "[i]n West Virginia, the common law writ of error coram nobis is available only in criminal proceedings." The case was remanded for the circuit court to hold a hearing on the merits of Mr. Hutton's petition.

On December 16, 2015, the circuit court held an evidentiary hearing on Mr. Hutton's petition. Testimony was taken from four witnesses at the hearing: Mr. Hutton,[6] Thomas G. Dyer,[7] A. Courtenay Craig,[8] and Michael Blumenthal.[9] At the conclusion of the hearing, the circuit court entered an order on October 18, 2016, that denied relief to Mr. Hutton. This appeal followed.

## II.

## STANDARD OF REVIEW

▮ In this proceeding, the circuit court entered an order denying Mr. Hutton coram nobis relief. In our consideration of that order, we apply the following standard of review:

We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, in part, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). *Accord State v. Murray*, 235 W. Va. 312, 319, 773 S.E.2d 656, 663 (2015).

## III.

## DISCUSSION

▮ In order to understand the posture of the issues presented in this appeal, a review of a few legal principles set out in our opinion in *Hutton I* is required. To begin, in the decision in *Hutton I* we recognized that the opinion by the United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), required attorneys to advise immigrant criminal defendants of the deportation consequences of a guilty plea. We addressed the issue in Syllabus point 4 of *Hutton I* as follows:

Under *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. When the deportation consequence is succinct, clear, and explicit under the applicable law, counsel must provide correct advice to the client. When the law is not

---

5. Under the federal Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2008) (2012 ed.), "[a]n alien who has been convicted of an 'aggravated felony' ... is removable from the United States." *Rodriguez-Contreras v. Sessions*, 873 F.3d 579, 579–80 (2017).

6. Mr. Hutton testified via video conferencing.

7. Mr. Dyer was the attorney who represented Mr. Hutton when he entered his plea of guilty to unlawful assault.

8. Mr. Craig represented Mr. Hutton for post-trial motions after he entered his plea of guilty to unlawful assault.

9. Mr. Blumenthal was one of the attorneys who represented Mr. Hutton during the appeal in *Hutton I*. Mr. Blumenthal testified via telephone.

succinct or straightforward, counsel is required only to advise the client that the criminal charges may carry a risk of adverse immigration consequences. 235 W. Va. 724, 776 S.E.2d 621. In order to obtain relief for a *Padilla* violation a defendant must show prejudice. *See Padilla*, 559 U.S. at 374, 130 S.Ct. at 1487, 176 L.Ed. 2d. 284 ("Whether Padilla is entitled to relief will depend on whether he can demonstrate prejudice as a result thereof, a question we do not reach because it was not passed on below."). In light of *Padilla*, we adopted a test in *Hutton I* for a determination of whether a defendant in a coram nobis proceeding may have a plea set aside as a result of a *Padilla* violation. The test was set out in syllabus point 5 of *Hutton I* as follows:

A claim of legal error may be brought in a petition for a writ of error coram nobis only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right.

It has been recognized that "[f]ailure to establish any of the above elements will defeat a petition for coram nobis relief." *Borelli v. United States*, No. 17-2814 (JLL), 2017 WL 4074027, at *2 (D.N.J. Sept. 14, 2017).

 We remanded the case in *Hutton I* so that the circuit court could afford Mr. Hutton an opportunity to present evidence on each of the four elements of the above test. At the conclusion of the hearing on the matter, the circuit court denied relief after determining that Mr. Hutton's evidence satisfied only the third element of the four-part test.[10] In this appeal, the State has conceded

that Mr. Hutton also satisfied the first element of the test.[11] *See Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) ("The Government does not contest the proposition that Bereano has satisfied the first three of the foregoing prerequisites for coram nobis relief."); *United States v. Verrusio*, No. 09-cr-00064 (BAH), 2017 WL 1437055, at *8 (D.D.C. Apr. 21, 2017) ("The government also does not quarrel with the defendant's claim that the first and second factors have been met. Instead, the government argues that the defendant cannot satisfy the third or the fourth factor."). As a general rule, we are not obligated to accept the State's concession of error by the circuit court on an issue. *See* Syl. pt. 8, in part, *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991) ("This Court is not obligated to accept the State's confession of error in a criminal case."). However, the record shows quite clearly that Mr. Hutton established the first element of the test by showing that a more usual remedy was not available. Consequently, we summarily reject the circuit court's finding on this issue.[12] We will confine our analysis to the second and fourth elements of the *Hutton I* test: valid reasons exist for not attacking the conviction earlier and the error presents a denial of a fundamental constitutional right. We will address each issue separately.

## A. A Valid Reason Exists for Not Attacking the Conviction Earlier

 Mr. Hutton argues that the circuit court erred in finding that no valid reason existed for his failure to challenge the unlawful assault conviction earlier in a habeas corpus proceeding. In this appeal, the State also has argued that "Mr. Hutton failed to exercise reasonable diligence in asserting his claim."

---

10. The circuit court's order concluded that "[a]dverse consequences may presently exist for [Mr. Hutton] as a result of his deportation[.]"

11. The State indirectly conceded the issue by failing to brief the matter.

12. The circuit court determined that Mr. Hutton had a federal remedy through an appeal of the deportation order. The record does not support such a finding. The State's brief correctly pointed out that "[t]o the extent Mr. Hutton seeks to have

his conviction vacated and not merely to avoid the deportation consequences of his conviction, his federal appeal does not provide a more usual remedy." *See Drakes v. I.N.S.*, 330 F.3d 600, 603 (3d Cir. 2003) (holding "that a petitioner could not challenge [in federal court] his underlying [state] conviction even though it was the basis for the BIA's order of deportation."). In fact, the record shows that Mr. Hutton's appeal of the deportation order has been stayed pending the outcome of this proceeding.

As previously mentioned, the decision in *Hutton I* required Mr. Hutton show that a valid reason existed for not attacking his conviction earlier. The opinion in *Colon v. United States*, No: 1:12-cr-204 (JCC), 2016 WL 7210350 (E.D. Va. Dec. 12, 2016) illustrates the meaning of attacking a conviction earlier. The defendant in *Colon* was an immigrant who pled guilty to a drug charge in federal court. After the defendant served her prison sentence, she was turned over to immigration officials for deportation. The defendant thereafter filed a petition for a writ of coram nobis on the grounds that her counsel failed to inform her of the deportation consequences of the guilty plea. The district court rejected the petition. In doing so, the court addressed the issue of attacking the conviction timely as follows:

> In its opposition, the Government concedes that Colon's plea agreement, as well as the plea hearing, did not include a discussion of immigration consequences that might result from Colon's guilty plea.... The Government argues, however, that at least by the time Colon was sentenced—on August 24, 2012—she had been informed that her conviction would result in a deportation review.... In fact, the Judgment entered on that date included the special conditions that Colon be surrendered to ICE for deportation review and that, if deported, Colon remain outside the United States. ... Precisely due to this evidence of Colon's knowledge of the risk of deportation, the Government claims that she has provided no justification for waiting to attack her conviction in the intervening three years and seven months....
>
> Colon's reply to the Government's opposition argues that she was unable to attack her conviction earlier because she was unaware that her conviction would result in "an automatic mandatory deportation." .... She asserts that she first realized that she would be deported on December 16, 2015.... Before that time, she thought that the language in her special conditions meant only that "[deportation] may or may not happen." ... In other words, Colon appears to be claiming that she had no

reason to attack her conviction before April 2016.

> Unfortunately, Colon's relative uncertainty about the possibility of deportation, and her possible hope that she would not be deported at all, do not provide a legitimate justification for her delay. Colon has failed to establish a valid reason for not attacking her conviction earlier. Thus, the Court will deny her motion.

*Colon*, 2016 WL 7210350, at *2. *See also Eastwood v. United States*, No. 3-16-cv-00536-JAG, 2017 WL 462635, at *3 (E.D. Va. February 3, 2017) ("She claims that she could not bring this attack earlier because she 'was unaware of the near-mandatory effect of her plea until deportation proceedings were initiated against her.' This completely ignores the fact that the presiding judge at sentencing required Eastwood to surrender to immigration officials after she completed her term of imprisonment. Thus, no valid reason exists why Eastwood did not challenge her conviction earlier, rendering relief through writ of error coram nobis unavailable."); *Kokoski v. United States*, No. 5:12-2150, 2013 WL 1337408, at *7 (S.D.W. Va. Mar. 29, 2013) ("While the test above does not present a set time limit for filing coram nobis petitions ..., it would be unfair to allow Petitioner to seek coram nobis relief at this time when such relief could have been pursued years ago.").

The decision in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012), illustrates a timely attack of a conviction.[13] The defendant in *Akinsade* was born in Nigeria and came to the United States in 1988, at the age of seven. In 2000, the federal government charged the defendant with embezzlement from a bank. During plea bargaining negotiations, the defendant's attorney informed him twice that he could not be deported based on a single offense. The defendant was told that he could be deported only if he had two felony convictions. Relying on this legal advice, the defendant pled guilty. Prior to accepting the plea, the district judge warned the defendant that if he was not a citizen he could be deported. After accepting the plea, the district court sentenced the defendant to one month of imprisonment, and a three-year

---

**13.** The decision in *United States v. Akinsade* is more fully discussed in *Hutton I*.

term of supervised release. Approximately nine years after the defendant was convicted and sentenced, he was arrested by immigration authorities and charged with deportation as an aggravated felon based upon the embezzlement conviction. The defendant filed a coram nobis petition in federal court, alleging a violation of his Sixth Amendment right to effective assistance of counsel because of the wrong advice given to him by his trial counsel. The district court rejected the argument on the ground that the defendant was not prejudiced, because the trial judge had warned him of the potential for deportation during the plea hearing. The Fourth Circuit disagreed and vacated the defendant's plea. In doing so, the opinion addressed the timeliness of the coram nobis attack on the conviction as follows:

> Second, valid reasons exist for Akinsade not attacking the conviction earlier. Until physically detained by immigration authorities in 2009, Akinsade had no reason to challenge the conviction as his attorney's advice, up to that point in time, appeared accurate....
>
> ....
>
> ... [T]he district court warned that Akinsade's plea *could* lead to deportation. This general and equivocal admonishment is insufficient to correct counsel's affirmative misadvice that Akinsade's crime was not categorically a deportable offense. More importantly, the admonishment did not "properly inform" Akinsade of the consequence he faced by pleading guilty: mandatory deportation. Thus, Akinsade could not have known that deportation was a legally mandated consequence of his plea.

*Akinsade*, 686 F.3d at 252-54.

The decisions in *Colon* and *Akinsade* help illustrate that attacking a conviction for a *Padilla* violation is not foreclosed because of a failure to timely attack a conviction on some other basis. That is, for purposes of asserting a *Padilla* claim in a coram nobis proceeding, the issue of timely attacking the conviction is limited to showing a timely assertion of the *Padilla* immigration violation.

In the instant proceeding, the State contends that Mr. Hutton could have attacked his conviction in a habeas corpus proceeding long before he filed the *Padilla* coram nobis petition.[14] The State relies upon evidence presented below that Mr. Hutton's attorney for post-trial motions, A. Courtenay Craig, had advised him that he may have had a claim for ineffective assistance of counsel against his trial lawyer. The State's reliance on a habeas attack is meritless because of the reason given by Mr. Craig when he informed Mr. Hutton of the potential for an ineffective assistance of counsel claim. Mr. Craig testified that he believed Mr. Hutton's trial counsel did not adequately prepare for trial and that, as a result of this inadequacy, he might have a claim for ineffective assistance of counsel. Mr. Craig testified to this issue during direct examination by counsel for Mr. Hutton:

> Q. —you didn't realize he had immigration consequences through IRAIRA, and you didn't realize he had a defense and a claim of ineffective assistance of counsel based on *Padilla*, do you feel that you were, in fact, ineffective by failing to bring that to his attention at that point?
>
> A. Okay. I can say this, at the time that I became aware of *Padilla* and this terminated, he'd already pled. It doesn't change his situation one way or another because I told him I think you have an ineffective assistance of counsel claim, but we need to hold on to that because—
>
> Q. And that was based on the failure to properly prepare for trial, that wasn't even based on *Padilla* was it?
>
> A. Right, exactly. I had that discussion with him about a habeas corpus down the way, but also discussed at length I was doing it the way I was doing it, because that's what I—
>
> ....
>
> Q. But the fact that you didn't know the consequences, you didn't know that *Padilla* existed, and you didn't tell him that he had that ineffective assistance claim based on *Padilla*, do you now, in retrospect, look at that and say, well, that was probably ineffective assistance?

14. The circuit court also made this determination.

A. If you put it like that, I guess so.

It is clear from the above testimony that Mr. Craig did not inform Mr. Hutton that he had a habeas claim based upon a *Padilla* violation. In fact, Mr. Craig did not know about *Padilla* when he represented Mr. Hutton. The fact that Mr. Hutton was informed that he may have had an ineffective assistance of counsel claim based on his trial attorney's failure to adequately prepare for trial is irrelevant for purposes of timely asserting a *Padilla* claim. As illustrated in *Colon* and *Akinsade*, the point at which a defendant has knowledge of a *Padilla* claim determines whether the related attack of a conviction was timely made. In this case, the record shows that Mr. Hutton learned that he would be deported when he was served with a deportation warrant on May 23, 2013. Mr. Hutton testified below that it was after he was served with deportation papers that he first learned about a *Padilla* claim. Mr. Hutton indicated that he learned of a *Padilla* claim from another inmate who also was facing deportation. Thereafter, on September 4, 2013, Mr. Hutton filed this petition for a writ of coram nobis asserting a *Padilla* violation. Under these facts, it is clear that a valid reason existed for Mr. Hutton's failure to attack his conviction for a *Padilla* violation prior to 2013, *i.e.*, he was never aware of his rights under *Padilla* until an inmate told him in 2013. Consequently, we find the circuit court erred in finding Mr. Hutton did not have a valid reason for failing to assert his *Padilla* claim earlier.

### B. The Error Presents a Denial of a Fundamental Constitutional Right

Under the fourth element of the *Hutton I* test, we must determine whether the failure of Mr. Hutton's trial counsel to inform him of the deportation consequences of his guilty plea denied him a fundamental constitutional right. Mr. Hutton argues that his Sixth Amendment right to effective assistance of counsel was violated as a result of his trial counsel's failure to inform him that he would be deported if he pled guilty to the felony

offense of unlawful assault. The State argues, and the circuit court concluded, that no Sixth Amendment violation occurred. We disagree.

In determining whether a criminal defendant received ineffective assistance of counsel, we apply the following test:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

The first prong of the *Strickland* test, deficient performance, can be disposed of summarily. As we have previously mentioned, under *Padilla* the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. The State asserts, and the circuit court so found, that defense counsel made "a reasonable investigation of Mr. Hutton's immigration status and reasonably concluded that he should not worry about Mr. Hutton's immigration status." The record does not support this conclusion. The vague and inconsistent testimony of defense counsel reveals that he made no immigration investigation. *See* Lindsay C. Nash, *Considering the Scope of Advisal Duties Under Padilla*, 33 Cardozo L. Rev. 549, 576 (2011) ("[D]efense attorneys must investigate and research the law using available resources and then advise noncitizen defendants about immigration consequences at the level of specificity that research permits."). Assuming, for the sake of argument, that such an investigation was made, *Padilla* required defense counsel to inform Mr. Hutton that, if he was an immigrant, his guilty plea would subject him to deportation. This was not done.[15] Con-

---

**15.** During the examination of trial counsel at the hearing he stated the following: "But, you know, there were no—I didn't—in fairness to Mr. Hutton, when it came to this plea I didn't sit down

and say, listen, let's make sure this is not going to have an effect on your citizenship or immigration status. I did not do that." See *Diaz v. State*, 896 N.W.2d 723, 732 (Iowa 2017) ("Certainly,

sequently, Mr. Hutton's trial counsel's performance was deficient. *See United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017) ("Counsel's failure to advise a client about 'succinct, clear, and explicit' immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment."); *Commonwealth v. Lavrinenko*, 473 Mass. 42, 38 N.E.3d 278, 290 (2015) ("[T]he failure of a criminal defense attorney to make a reasonable inquiry of the client regarding his or her citizenship and immigration status is sufficient to satisfy the deficient performance prong of the ineffective assistance analysis."); *State v. Favela*, 343 P.3d 178, 182 (N.M. 2015) ("A defense attorney's failure to advise a client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain[,] renders that attorney's performance deficient, which satisfies the first prong of the Strickland test.").

Under the second prong of the *Strickland* test, Mr. Hutton has to show that he was prejudiced by his trial counsel's deficient performance. That is, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Under the prejudice prong of *Strickland*, "[t]he potential strength of the state's case must inform our analysis, inasmuch as a reasonable defendant would surely take it into account." *Ostrander v. Green*, 46 F.3d 347, 356 (4th Cir. 1995), *overruled on other grounds by*, *O'Dell v Netherland*, 95 F.3d 1214 (4th Cir. 1996) (en banc). However, *Padilla* does not require a showing that Mr. Hutton would have prevailed if the case went to trial. *Padilla* made clear that, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S.Ct. at 1485. This issue was succinctly articulated in *Swaby*, 855 F.3d at 243-44:

any person contemplating a plea of guilty to a crime that could lead to deportation would want

[T]he prejudice prong does not require a defendant to show that going to trial would have been the best objective strategy or even an attractive option. It merely requires the defendant to show a reasonable likelihood that a person in the defendant's shoes would have chosen to go to trial. The decision does not need to be optimal and does not need to ensure acquittal; it only needs to be rational.

The decision in *Akinsade, supra*, helps illustrate a showing of prejudice. As previously noted, the defendant in *Akinsade* pled guilty to a charge of embezzlement. This conviction was a deportable offense because the amount of money involved exceeded $10,000. In evaluating the defendant's claim of prejudice due to a *Padilla* violation, the Fourth Circuit ruled as follows:

Akinsade pleaded guilty to a deportable offense that involve[d] fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000.... Before the district court, Akinsade's counsel asserted that if Akinsade had gone to trial, he would have argued that the amount of loss was $8,000. His counsel noted that Akinsade was ordered to pay restitution in the amount of $8,000, which he had paid in full, and further that Akinsade would have disputed his involvement with a third check that placed him over the $10,000 amount. Consequently, the choice to go to trial is rational and we cannot conclude that a reasonable defendant in [Akinsade's] shoes, having asked for, received, and relied upon encouraging advice' about the risks of deportation, would have pled guilty anyway had he known that his attorney was mistaken.... Thus, we find that counsel's affirmative misrepresentations that the crime at issue was non-deportable prejudiced Akinsade. Akinsade has met his burden under prong two of *Strickland*. In doing so, he has also demonstrated that he has suffered a fundamental error necessitating coram nobis relief....

*Akinsade*, 686 F.3d at 256 (internal quotations and citations omitted). What is clear from the discussion in *Akinsade* is that a

to know the full meaning and consequences of deportation.").

focus on the strength of the government's case is not controlling.

In the instant proceeding, the State argues that it had a strong case against Mr. Sutton for all four charges: malicious assault and three counts of sexual assault in the second degree. The State's evidence included testimony by the victim alleging that Mr. Hutton beat her and that several days after the beating he sexually assaulted her. The State also was prepared to introduce medical records to corroborate the beating, as well as testimony by persons who allegedly saw the victim after the physical assault. Further, the State alleged that it had a statement made by Mr. Hutton admitting to some of the allegations of beating the victim.

Mr. Hutton presented testimony that he would have gone to trial if he had known that his guilty plea would result in his deportation. Mr. Hutton contended that he would challenge the severity of the physical assault, because the medical records showed only "injuries that are in all cases self-reported pain with no visible injuries[.]" There also was evidence below that Mr. Hutton was prepared to introduce "impeachment evidence regarding telephone calls from the alleged victim's phone, and admissions under oath by the alleged victim of meretricious sex with [him]." The record in this case also indicated that Mr. Hutton entered a *Kennedy* plea of guilty, wherein he protested that he was actually innocent. The evidence also shows that Mr. Hutton was born in Jamaica, in 1962, and was brought to the United States at about the age of nine years old. He has never returned to Jamaica since immigrating to this country as a child. Mr. Hutton's immediate family, including his son,[16] mother, and siblings live in the United States.[17] We believe that under the facts of this case, if Mr. Hutton's trial counsel had informed him that he would be deported if he pled guilty, a rejection of the plea bargain would have been rational under the circumstances. *See Diaz v. State*, 896 N.W.2d 723, 734 (Iowa 2017) ("We

conclude Morales Diaz would not have accepted this plea agreement if he had been provided the effective assistance of counsel to which he was entitled under the Sixth Amendment to the U.S. Constitution."); *Matter of Petition of Isidro-Soto*, No. 46673-2-II, 198 Wash.App. 1070, 2017 WL 1907740, at 5* (Wash. Ct. App. May 9, 2017) ("While Isidro–Soto would have faced a longer sentence had he lost at trial, deportation is also a particularly severe penalty. Consequently, it would have been rational for Isidro–Soto to take his chances at trial. Accordingly, Isidro–Soto shows that there is a reasonable probability that, but for defense counsel's failure to advise, he would not have pleaded guilty and would have insisted on going to trial.").

Our conclusion in this matter is supported by the recent decision of the United States Supreme Court in *Lee v. United States*, — U.S. ——, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017). The defendant in *Lee* was arrested in 2009 by the federal government and charged with possession of drugs with intent to sell. The defendant eventually pled guilty to the charge with the understanding that he would receive a lighter sentence by avoiding a jury trial. Prior to entering the plea, the defendant was assured by his attorney that he would not face deportation proceedings by pleading guilty.[18] Subsequent to being sentenced, the defendant learned that he would be deported as a result of his conviction. The defendant thereafter filed a motion to set aside the plea on the ground of ineffective assistance of counsel. The district court found that trial counsel's performance was deficient under *Strickland*, but that because the government's case was strong, the defendant failed to satisfy the prejudice prong of *Strickland*. The court of appeals agreed with the decision of the district court. The Supreme Court granted certiorari and reversed. The Supreme Court found in *Lee* that the defendant satisfied the prejudice prong of *Strickland* as follows:

---

**16.** As previously indicated, the mother of Mr. Hutton's son is the alleged victim in the case.

**17.** The record indicates that Mr. Hutton's father immigrated to the United States, but died in 2004.

**18.** The defendant was born in South Korea and was brought to this country by his parents at the age of thirteen, in 1982.

Here Lee knew, correctly, that his prospects of acquittal at trial were grim, and his attorney's error had nothing to do with that. The error was instead one that affected Lee's understanding of the consequences of pleading guilty....

Lee ... argues he can establish prejudice ... because he never would have accepted a guilty plea had he known that he would be deported as a result. Lee insists he would have gambled on trial, risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States. The Government responds that, since Lee had no viable defense at trial, he would almost certainly have lost and found himself still subject to deportation, with a lengthier prison sentence to boot. Lee, the Government contends, cannot show prejudice from accepting a plea where his only hope at trial was that something unexpected and unpredictable might occur that would lead to an acquittal.

. . . .

But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea.... When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive.... Here Lee alleges that avoiding deportation was *the* determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial.

. . . .

There is no reason to doubt the paramount importance Lee placed on avoiding deportation. Deportation is always a particularly severe penalty, ... and we have recognized that preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.... At the time of his plea, Lee had lived in the United States for nearly three decades, had established two businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents—both naturalized American citizens. In contrast to these strong connections to the United States, there is no indication that he had any ties to South Korea; he had never returned there since leaving as a child.

. . . .

Lee's claim that he would not have accepted a plea had he known it would lead to deportation is backed by substantial and uncontroverted evidence. Accordingly we conclude Lee has demonstrated a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial....

*Lee,* 137 S.Ct. at 1965-69 (internal quotations, citations, and footnotes omitted). *See also Tzen v. United States,* No. 16-0734-DRH, 2017 WL 4233077, at *4 (S.D. Ill. Sept. 22, 2017) ("Based on the record and the circumstances of this case, the Court finds that Tzen did not make a rational decision to plead guilty and that counsels were ineffective pursuant to *Lee* and the Sixth Amendment.").

In light of the evidence in the instant case and the guidance of *Lee,* we reverse the circuit court's order and grant Mr. Hutton coram nobis relief. On remand Mr. Hutton will be allowed to withdraw his guilty plea and stand trial for the offenses for which he was indicted. *See Grooms v. United States,* No. 3:09-1174-CMC, 2013 WL 5771180, at *4 (D.S.C. Oct. 23, 2013) ("where the plea was accepted due to ineffective assistance of counsel, the proper remedy is to vacate the conviction (that is, allow petitioner to withdraw his plea).").

## IV.

### CONCLUSION

For the foregoing reasons, the circuit court's order denying Mr. Hutton coram nobis relief is reversed, and this case is re-

manded for further proceedings consistent with this opinion.

Reversed and Remanded.

CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

JUSTICE WALKER dissents and reserves the right to file a dissenting opinion.

LOUGHRY, Chief Justice, dissenting:

In *State v. Hutton*, 235 W.Va. 724, 776 S.E.2d 621 (2015) ("*Hutton I*"), I concurred in the majority's historical analysis of the common law writ of error coram nobis, as well as its ultimate conclusion that the writ remains available only in extraordinary circumstances in criminal proceedings in West Virginia. I also concurred in the majority's new syllabus point four to the extent it reflected the holding of the United States Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).[1] However, I strongly disagreed with the majority's implication that *Padilla* imposes a duty on lawyers to explore the immigration status of all criminal defense clients,[2] and I expressed my opinion that *Padilla* has no application under the facts and circumstances of the case at bar. In the instant appeal, Orville Hutton[3] returns to this

Court, seeking relief from the circuit court's order denying relief in coram nobis, which was entered on remand from *Hutton I*. Because the majority erroneously reverses the circuit court's decision, I am compelled to dissent.

On remand, the circuit court held an evidentiary hearing to determine whether Mr. Hutton was entitled to relief in coram nobis from his conviction based on his claim of ineffective assistance of counsel, Thomas Dyer. In addressing that question, the circuit court was guided by syllabus point five of *Hutton I* wherein this Court held that

> [a] claim of legal error may be brought in a petition for a writ of error coram nobis only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right.

235 W.Va. at 726, 776 S.E.2d at 623. This four-part test was taken from the test set forth in *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012), which this Court found "provide[d] a good framework for limiting the use of the writ of error coram nobis to assert a constitutional legal error." Following its consideration of the evidence presented at

1. *See Hutton I*, 235 W.Va. at 725, 776 S.E.2d at 623, syl. pt. 4 ("Under *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the Sixth Amendment requires defense counsel to warn an immigrant client of the deportation consequences of a guilty plea. When the deportation consequence is succinct, clear, and explicit under the applicable law, counsel must provide correct advice to the client. When the law is not succinct or straightforward, counsel is required only to advise the client that the criminal charges may carry a risk of adverse immigration consequences.").

2. As I explained in my separate opinion in *Hutton I*,

> In footnote eighteen, the majority excuses Mr. Hutton's admitted failure to advise his counsel of his immigration status by stating that the *Padilla* Court did not place a burden on criminal defendants to advise their lawyers of their immigration status. While that statement may be correct, I am concerned that the inverse implication of footnote eighteen is that the burden is on lawyers to explore the immigra-

tion status of every criminal defense client, notwithstanding the fact that *Padilla* did not expressly impose such a duty. Because the focus of *Padilla* was on the importance of a lawyer giving his or her client accurate advice regarding the immigration consequences of a guilty plea, the Court simply never addressed precisely how immigration status was to be discerned. *See* [*State v.*] *Stephens*, 265 P.3d [574,] at 577 ("The only issue the United States Supreme Court decided was whether defense counsel had a duty to inform his client, known to be a resident alien, of the effect of a guilty plea on the client's immigration status.").

*Hutton I*, 235 W.Va. at 744-45, 776 S.E.2d at 641-42 (Loughry, J., concurring, in part, and dissenting, in part).

3. "Mr. Hutton was born in Jamaica in 1962. He came to the United States in 1971, at the age of nine. Mr. Hutton has resided in this country since that time. He is classified as a permanent resident of this country, but he is not an American citizen." *Hutton I*, 235 W.Va. at 726, 776 S.E.2d at 623.

the hearing below, the circuit court entered an order on October 18, 2016, finding that Mr. Hutton failed to meet three of the four factors set forth above.[4]

Regarding the first factor, the circuit court found that Mr. Hutton has a more usual remedy through his federal appeal that is pending in the Third Circuit Court of Appeals. And, because that appeal involves a split among the federal circuit courts, the circuit court further observed that Mr. Hutton could pursue a petition for certiorari to the United States Supreme Court. The majority does not address this factor and, instead, finds that the State had "indirectly conceded the issue" when it stated that "[t]o the extent Mr. Hutton seeks to have his conviction vacated and not merely to avoid the deportation consequences of his conviction, his federal appeal does not provide a more usual remedy." The majority ignores the State's further argument that "a remedy remains available so long as jurisdiction would be proper in some other court even if relief is foreclosed."[5] In other words, even if Mr. Hutton cannot collaterally attack his state conviction through his deportation appeal pending in federal court, he is pursuing the relief that he seeks in the instant matter—avoiding deportation—through a more usual remedy in the federal court, and his

likelihood of success in his federal case is irrelevant to whether that avenue is "an available more usual remedy."[6]

In addressing the second factor, the circuit court concluded that Mr. Hutton had not demonstrated a valid reason for failing to attack his conviction earlier through a habeas corpus petition, particularly where the evidence showed that his post-conviction counsel advised him of the possibility of filing a habeas petition alleging ineffective assistance of counsel, even if not on the same basis that Mr. Hutton currently asserts. While Mr. Hutton was serving his sentence, he pursued numerous post-conviction challenges.[7] Had he brought an ineffective assistance of counsel claim in a habeas proceeding, as his post-conviction counsel suggested, he might have achieved the relief from his conviction that he currently seeks through a writ of error coram nobis, which is only available in extraordinary circumstances.

Although the majority attempts to qualify, through dicta, the second factor in syllabus point five of *Hutton I*, by restricting it to whether Mr. Hutton's *Padilla* claim was timely, such was not the intent in *Akinsade* upon which this Court based the four-part test for a writ of error coram nobis adopted

---

**4.** Regarding the third factor, the circuit court stated in order, as follows:

Adverse consequences may presently exist for Petitioner/Defendant as a result of his deportation (removal) proceedings, regardless of being deemed either direct or collateral. However, such further developed evidentiary record herein ... does not establish the threshold requirement of his having been denied a fundamental constitutional right established pursuant to *Padilla*.

**5.** In support of its argument, the State cites *United States · v. Payne*, 644 F.3d 1111 (10th Cir. 2011), wherein the court denied the defendant's request for a writ of error coram nobis, finding "[i]t [was] irrelevant that a § 2255 motion would have been untimely by the time he filed his petition for a writ of *coram nobis.*" *Id.* at 1113. The State also relies upon *Matus-Leva v. United States*, 287 F.3d 758 (9th Cir. 2002), in which the court found that a writ of error coram nobis requires that other remedies be unavailable, stating that "Matus-Leva's argument that a § 2255 petition is not really available to him because it is time barred under the Antiterrorism and Effective Death Penalty Act, is unavailing. A petitioner

may not resort to *coram nobis* merely because he has failed to meet the AEDPA's gatekeeping requirements." *Id.* at 761 (footnote omitted).

**6.** The circuit court recounted in its order testimony given by Mr. Hutton's immigration expert during the evidentiary hearing below: "[G]enerally ... the basic law suggests ... that if you are convicted of an aggravated felony you are, as a matter of law, deportable[,]" but that "as with all immigration cases, the government has a great deal of discretion as to enforcement, and usually the cases ... of undue hardship to family, extenuating circumstances, time in the country, time since the crime was committed, etc., etc., which the courts can take into consideration."

**7.** In August 2010, Mr. Hutton filed a notice of appeal with the assistance of his post-conviction counsel in which he identified two issues: (1) ineffective assistance of counsel; and (2) any other grounds that may be discovered during the investigation of this case. In a motion for post-conviction bond, Mr. Hutton stated that he might waive his right to appeal and "prosecute a Writ of Habeas Corpus for ineffective assistance of counsel."

in *Hutton I*. In *Akinsade*, the defendant pled guilty to embezzlement after his attorney incorrectly told him that it was not a deportable offense. *Akinsade*, 686 F.3d at 250. When the defendant later sought relief from his conviction through coram nobis, the Fourth Circuit found that the defendant had no basis to challenge his conviction prior to being detained by immigration authorities because "his attorney's advice, up to that point in time, appeared accurate." *Id.* at 252. In the instant matter, Mr. Hutton's post-conviction counsel had identified a basis for Mr. Hutton to challenge his conviction—ineffective assistance of trial counsel—but it was not pursued. Accordingly, I agree with the circuit court's conclusion that Mr. Hutton failed to meet the second coram nobis factor because he "was aware of his ability to file a Petition for a Writ of Habeas Corpus attacking his conviction for ineffective assistance of counsel during his initial period of incarceration following his sentencing in the underlying criminal matter" and that he had "not demonstrated the existence of any valid reason for having not attacked his underlying conviction earlier upon claims of ineffective assistance of counsel towards Mr. Dyer."

Turning to the fourth coram nobis factor—whether the legal error asserted presents a denial of a fundamental constitutional right—Mr. Hutton alleges an ineffective assistance of counsel claim based on *Padilla*. In West Virginia,

> claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

In addressing Mr. Dyer's performance with regard to *Padilla*, the circuit court found that Mr. Dyer's testimony was credible and demonstrated that Mr. Hutton was alerted to potential immigration issues dependent upon his actual citizenship status in the conversations he had with Mr. Dyer. The circuit court further found that Mr. Hutton "chose ... to not directly disclose ... the exact nature of [his] status" to Mr. Dyer and that his evasive responses caused Mr. Dyer to infer that Mr. Hutton was not an immigrant.[8] This inference was reasonable and certainly not indicative of deficient performance. In fact, under *Strickland*, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions[,]" particularly since counsel's actions "are usually based, quite properly ... on information supplied by the defendant." 466 U.S. at 691, 104 S.Ct. 2052. Further, "what investigation decisions are reasonable depends critically on such information." *Id.* Moreover, the circuit court found that Mr. Hutton's contrary testimony was not credible. *See Anderson v. City of Bessemer*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (finding that credibility determinations are due deference because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."). As the circuit court aptly observed,

> [a]ny constitutional right infirmity alleged for post-conviction extraordinary relief cannot be prefaced upon Petitioner/Defendant's selective memory, his voluntary failure to adequately apprise his legal counsel of pertinent personal information which may significantly impact the resulting legal representation and/or his subjective hindsight upon discovering adverse consequences to his criminal conviction and resulting incarceration.

In evaluating Mr. Hutton's ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly def-

---

**8.** The majority disagrees with the circuit court and finds, instead, that Mr. Dyer's testimony was vague and inconsistent. However, what is clear from Mr. Dyer's testimony is that he did not have any conversations with Mr. Hutton about the immigration consequences of pleading guilty because when he asked Mr. Hutton whether this was an issue we should be concerned with, Mr. Hutton responded, "no, don't worry about it."

erential[.]" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Although the circuit court found that Mr. Hutton had not demonstrated that his counsel was ineffective, rather than applying deference to that conclusion, the majority "summarily" disposes of the first prong of *Strickland*, finding that Mr. Dyer's performance was deficient because "*Padilla* required defense counsel to inform Mr. Hutton that, if he was an immigrant, his guilty plea would subject him to deportation."[9] Of course, one could read this statement as somehow imposing a broad duty upon counsel to investigate the immigration status of criminal clients. If that is the majority's intent, I strongly disagree.

First, as I explained in my separate opinion in *Hutton I*, *Padilla* does not provide Mr. Hutton the relief that he seeks. I observed that

> [t]he sole similarity between Mr. Hutton in the instant matter, and the petitioner in *Padilla*, Jose Padilla, is that both were longtime, lawful permanent residents of this country, but not American citizens, when they became subject to deportation as a direct consequence of their guilty pleas to criminal charges. What remains are two factually significant differences that render *Padilla* inapplicable to Mr. Hutton's situation.

*Hutton I*, 235 W.Va. at 743, 776 S.E.2d at 640 (Loughry, J., concurring, in part, and dissenting, in part). In *Padilla*, Mr. Padilla told his counsel that he was not a United States citizen and asked counsel whether a guilty plea would have adverse immigration consequences. After being assured by his counsel that he " 'did not have to worry about immigration status since he had been in the country so long[,]' " Mr. Padilla pled guilty. *Padilla*, 559 U.S. at 359, 130 S.Ct. 1473 (internal citation omitted). That legal advice was incor-

rect because Mr. Padilla's conviction made "deportation virtually mandatory." *Id.* Contrasting those facts with the instant matter, during Mr. Hutton's first coram nobis hearing, he testified that he never told his counsel of his immigration status, a fact that was confirmed by Mr. Dyer's testimony during the evidentiary hearing held on remand. Moreover, unlike Mr. Padilla, Mr. Hutton does not assert that his trial counsel gave him incorrect immigration advice. To the contrary, the evidence presented during the evidentiary hearing below demonstrates that rather than advising his counsel of his immigration status and/or expressing concern regarding what his guilty plea would mean for him immigration-wise, Mr. Hutton was evasive, assuring counsel that it was nothing to worry about.

Second, it is "clear from *Padilla* that the Supreme Court did not expressly impose a blanket duty upon lawyers to ask every client charged with a crime whether they are American citizens." *Hutton I*, 235 W.Va. at 744, 776 S.E.2d at 641. Further,

> [t]he Supreme Court's silence in this regard has been recognized by other courts. For example, in *Clarke v. State*, 974 N.E.2d 562 (Ind. Ct. App. 2012), the court commented on the issue of whether criminal defense lawyers must "ascertain the citizenship of their clients[,]" observing that "this issue is percolating in other states[.]" *Id.* at 568. The Indiana court then cited *State v. Stephens*, 46 Kan. App.2d 853, 265 P.3d 574, 577 (2011), review denied, wherein the Kansas court stated that "[t]he *Padilla* Court did not ... impose upon counsel the duty to investigate the citizenship or immigration status of every client in a criminal case."

*Hutton I*, 235 W.Va. at 744, 776 S.E.2d at 641.[10] In the more recent decision of "*State v.*

---

9. The cases relied upon by the majority for this conclusion are factually distinguishable. For example, in *United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017), counsel "immediately recognized that 'immigration status would be a significant consideration' for Swaby, who had a green card and intended to apply for U.S. citizenship" and that "from the beginning of the representation, Swaby '[wa]s concerned and ha[d] always been concerned about his immigration status.' " *Id.* at 236. Similarly, in *State v. Favela*, 343 P.3d 178

(N.M. 2015), counsel was aware prior to the plea hearing that his client was not a United States citizen. Unlike these cases, Mr. Dyer testified below that when he asked Mr. Hutton whether this was an issue that they should be concerned about, Mr. Hutton told him, "no, don't worry about it."

10. Regarding *Padilla*, the *Stephens* court further observed that "[t]he only issue the United States Supreme Court decided was whether defense

*Rodriguez*, No. 108, 505, 320 P.3d 449 (Table) (Kan. App. Mar. 14, 2014) ... the Kansas court relied upon *Stephens*, again noting that '[t]he *Padilla* majority did·not impose a duty to investigate the citizenship or immigration status of every client in a criminal case.'" *Hutton I*, 235 W.Va. at 744, 776 S.E.2d at 641. I agree that if a client informs his or her lawyer that he or she is an immigrant, then *Padilla* imposes a duty on counsel to advise that client of the deportation consequences arising out of a guilty plea. However, because the United States Supreme Court has not imposed a duty on counsel to investigate the citizenship or immigration status of every client in a criminal case, I believe that any effort by the majority to impose such a duty is unfounded.

Regarding the second prong of *Strickland*, Mr. Hutton had to demonstrate that he was prejudiced by his counsel's deficient performance. Not only do I agree with the circuit court's conclusion that Mr. Hutton failed to show that his counsel had performed deficiently, I also agree with the court's conclusion that he could not show prejudice. The seriousness of the charges in the underlying criminal proceeding—one count of malicious assault and three counts of second degree sexual assault—and the strength of the evidence against him[11] made it unreasonable for Mr. Hutton to reject the plea agreement, which allowed him to plead guilty to one count of unlawful assault (a lessor included offense of malicious assault) with a dismissal of the other charges. Indeed, Mr. Hutton was facing overwhelming evidence, including the testimony of his victim, corroborating witnesses, and his own admissions.

Although the majority states that *Lee v. United States*, 582 U.S. ——, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017),[12] supports its conclusion that under the facts of this case, Mr. Hutton would·not have pled guilty had his counsel advised him that he would be deported if he did so, *Lee* does not help Mr. Hutton's cause. Unlike .Mr. Hutton, who was evasive with his counsel concerning his status, Mr. Lee "informed his attorney of his noncitizen status and repeatedly asked him whether he would face deportation as a result of the criminal proceedings." *Id.* at ——, 137 S.Ct. at 1963. In response, Mr. Lee's attorney incorrectly advised him that "he would not be deported as a result of pleading guilty." *Id.*

In addressing Mr. Lee's ineffective assistance of counsel challenge, the Supreme Court noted that the Court of Appeals had recalled the holding in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), stating that "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have·insisted on going to trial.'" *Lee*, 582 U.S. at ——, 137 S.Ct. at 1964. The Supreme Court further reasoned, however, that·

> common sense (not to mention our ·precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing·the respec-·tive consequences of a conviction after trial and by plea. *See INS v. St. Cyr*, 533 U.S. 289, 322–323, 121 S.Ct. 2271, 150 L.Ed.2d

---

counsel had a duty to inform his client, known to be a resident alien, of the effect of a guilty plea on the client's immigration status." *Stephens*, 265 P.3d at 577.

**11.** The State represents that during Mr. Hutton's plea hearing, the State proffered that "the victim [Mr. Hutton's girlfriend and the mother of his child] was prepared to testify that Hutton had hit her with his fists, choked her until she almost passed out, threw her into a wall, and continued to beat her with his fists and hands[;]" that "nine days after the battery, the victim needed assistance to get out of the house and could not walk on her own[;]" and that "[h]ospital records from nine days after the battery showed multiple con-

tusions to the back, chest, abdomen, shoulders, and sides, and a chest wall contusion." The State further represents·that during the hearing on the · motion for a protective order arising·out of the underlying criminal matter, the victim testified that Mr. Hutton sexually assaulted her while she was recuperating from the injuries she sustained in his physical attack upon her.

**12.** *Lee* had not yet issued at the time of·the circuit court's decision on remand. Mr. Hutton's counsel apprised this Court of the *Lee* opinion in his notice of additional authority filed under Rule of Appellate Procedure 10(i).

347 (2001). When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years.

*Lee*, 582 U.S. at ——, 137 S.Ct. at 1966-67. Regarding Mr. Lee's circumstances, the Supreme Court stated:

> We cannot agree that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial. But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the "determinative issue" for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time.... Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so.

*Lee*, 582 U.S. at ——, 137 S.Ct. at 1968-69.

As the majority observes, similar to Mr. Lee, Mr. Hutton has lived in the United States for the majority of his life and has family members who live here, including his son. Critically, however, unlike Mr. Lee, the prison time to which Mr. Hutton was exposed by pleading guilty, contrasted with his exposure had he gone to trial and been convicted, were not "similarly dire." *Lee*, 582 U.S. at ——, 137 S.Ct. at 1966-67. In fact, dissimilar to the Supreme Court's hypothetical of going to trial on a charge that carries a 20-year sentence where the prosecution's plea offer was 18 years," here, if convicted on all counts, Mr. Hutton's potential consecutive sentence was thirty-two to eighty-five years in prison,[13] whereas his plea bargain resulted in a one to five-year prison term.[14] Consequently, for Mr. Hutton, "[b]alanced against holding on to some chance of avoiding deportation was [ ] [*decades*] of prison time." *Id.* at ——, 137 S.Ct. at 1969. Because "the consequences of taking a chance at trial were [ ] markedly harsher than pleading[,]" a rejection of the plea bargain would have been irrational under the circumstances. *Id.* Accordingly, I would affirm the circuit court's conclusion that Mr. Hutton failed to demonstrate ineffective assistance of counsel and its decision to deny the writ of error coram nobis.

For these reasons expressed above, I respectfully dissent.

---

13. *See* W.Va. Code § 61-8B-4 (2014) (providing for penalty of ten to twenty-five years for second degree sexual assault); W.Va. Code § 61-2-9(a) (2014) (providing for penalty of two to ten years imprisonment for malicious assault).

14. Mr. Hutton's plea bargain allowed him to plead guilty to unlawful assault. *See* W.Va. Code § 61-2-9(a) (providing for penalty of one to five years imprisonment for unlawful assault).